OPINION
Defendant-appellant David Mattison appeals from his conviction and sentence for Possession of Marijuana and Having a Weapon While Under Disability, following his no-contest plea to those charges. Mattison, a parolee, argues that the trial court erred by overruling his Motion to Suppress, because the parole officers lacked "reasonable cause" to arrest him without a warrant, and "reasonable grounds" to search him or his property without a warrant.
We conclude that the parole officers had reasonable grounds to believe that Mattison was violating a condition of his parole, and therefore, were entitled to conduct a warrantless search of Mattison's person and property. We further conclude that while the parole officers did not have reasonable cause to arrest Mattison at the very moment they did, the parole officers were nevertheless permitted to detain and even handcuff Mattison at that point, in order to safely conduct their lawful search of Mattison's person and property, during which the parole officers gathered evidence sufficient to give them reasonable cause to place Mattison under arrest; thus, under the facts of this case, the bullet recovered from his person incident to his arrest was subject to the inevitable discovery rule. Accordingly, the judgment of the trial court is Affirmed.
 I
Mattison was paroled on January 1, 1997. In late April, 1998, State Parole Officer Timothy D. Jones received a telephone call from Dayton Police Officer Brad Mercer, who informed Jones that he had just received an "Officer Safety Alert" over the computer in his cruiser, stating that Mattison "possibly had a weapon." Jones contacted Mattison's assigned parole officer, Laura Butts, and obtained permission from her to search Mattison's residence. On May 1, 1998, Jones, Butts, and Mattison's initial parole officer, Jack Bergman, went to Mattison's home, without a warrant. After seeing Mattison pull his car into the garage, the officers knocked on the garage door. When Mattison opened the door, the officers immediately told him he was under arrest; Mattison was handcuffed, patted down, and read his Miranda rights. As a result of the pat-down, the officers found one .9mm bullet in Mattison's pocket. The officers conducted a search of the rest of Mattison's house, finding a Glock .9mm handgun under Mattison's mattress, a shotgun under his bed, and "bricks" of marijuana in a gym bag. Searching Mattison's car, the officers found more marijuana, and another handgun. Mattison informed the officers that he only had three guns.
Mattison was indicted on one count of Possession of Marijuana, pursuant to R.C. 2925.11; one count of Possessing Criminal Tools, pursuant to R.C. 2923.24(A); and three counts of Having Weapons While Under Disability, pursuant to R.C.2923.13(A)(3). Mattison moved to suppress the evidence seized from his person, residence, and car. The trial court overruled Mattison's suppression motion, after holding a hearing on it. Mattison subsequently pled no contest to Possession of Marijuana, and to one of the counts of Having a Weapon While Under Disability. The trial court found Mattison guilty of those charges and sentenced him to nine months imprisonment.
Mattison appeals from his conviction and sentence.
 II
Mattison's sole assignment of error states:
 THE TRIAL COURT ERRED WHEN IT OVERRULED THE SUPPRESSION MOTION, BECAUSE THE SEARCH OF APPELLANT, A PAROLEE, WAS CONDUCTED ABSENT "REASONABLE CAUSE" AND WITHOUT "REASONABLE GROUNDS."
Mattison argues that the trial court erred by overruling his motion to suppress because the parole officers lacked "reasonable grounds" to search him or his property pursuant to R.C.2967.131(B), and "reasonable cause" to arrest him pursuant to R.C.2967.15(A). We disagree.
 A
Pursuant to R.C. 2967.131(B),[1] a parole officer who is "engaged within the scope of [his] supervisory duties or responsibilities" may conduct a warrantless search of a parolee's person or property if the officer has "reasonable grounds to believe" that the parolee "is not abiding by the law or otherwise is not complying with the terms and conditions" of his parole. Although the term "reasonable grounds" is not defined in R.C.2967.131(B), the statute appears to have been enacted in response to the United States Supreme Court's decision in Griffin v.Wisconsin (1987), 483 U.S. 868, which considered the constitutionality of a similarly-worded Wisconsin regulation that permitted probation officers to conduct a warrantless search of a probationer's home so long as the probation officers had "reasonable grounds to believe" that contraband was present.
Under the facts in Griffin, a probation officer conducted a warrantless search of the home of Joseph Griffin, a probationer, after receiving an "unauthenticated tip" from an unidentified police officer that "there were or might be" guns in Griffin's home. Id. at 871, 878. The officer found a weapon at Griffin's home. Griffin was subsequently charged with Possession of a Firearm by a Convicted Felon. The trial court denied Griffin's motion to suppress, and Griffin was subsequently convicted. Both the intermediate appellate court and the Wisconsin Supreme Court affirmed Griffin's conviction.
The United States Supreme Court held that the search of Griffin's home did not violate the Fourth Amendment "because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." Id. at 872-873. The Griffin court began its analysis by stating that "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be `reasonable.'" Id. at 873. The court noted that while it usually required that searches be conducted only pursuant to warrants supported by probable cause, it had "permitted exceptions when `special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" Id., quoting New Jersey v. T.L.O. (1985),469 U.S. 325, 351. The court found that a state's operation of a probation system is a "special need" of the state, beyond the normal need for law enforcement, which "permitt[ed] a degree of impingement upon privacy that would not be constitutional if applied to the public at large." Griffin, supra, at 875. The court concluded that the special needs of Wisconsin's probation system made the warrant requirement "impracticable," and justified replacing the probable cause standard with that of "reasonable grounds." Specifically, the court stated:
 [i]n some cases — especially those involving drugs or illegal weapons — the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances.
 To allow adequate play for such factors, we think it reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search. The same conclusion is suggested by the fact that the police may be unwilling to disclose their confidential sources to probation personnel. For the same reason, and also because it is the very assumption of the institution of probation that the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law, we think it enough if the information provided indicates, as it did here, only the likelihood ("had or might have guns") of facts justifying the search. Id. at 879-880. (Footnotes omitted.)
The Griffin court also stated that the requirement of reasonable grounds, as interpreted by the Wisconsin Supreme Court, met "constitutional minimum standards." Id. at 880, fn. 8.
We find no meaningful distinction between Griffin and the case before us. The parole officers conducted their search of Mattison's person and property after receiving an unauthenticated tip from a police officer that Mattison was "possibly armed." This is similar to the information received by the probation officers in Griffin ("had or might have guns"), which was found to meet "constitutional minimum standards." Additionally, the fact that the parole officers in this case acted upon uncorroborated, "third-hand" information is of no consequence, since underGriffin, there was no indication in the record regarding whether the basis of the police officer's tip came from "firsthand knowledge or, if not, whether the firsthand source was reliable."Id. at 878. Moreover, the Griffin court found it "reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search." Id. at 879-880 (footnote omitted). Furthermore, although Griffin involved a probationer, while Mattison is a parolee, there is no material distinction to be drawn in this state regarding the constitutional guarantees of either class.State v. Benton (1998), 82 Ohio St.3d 316, 319, fn. 1, citingState v. Roberts (1987), 32 Ohio St.3d 225, 229.
Mattison argues that Griffin requires that a search of a probationer's home be conducted only pursuant to probable cause, and points to the Griffin court's use of the phrase, "likelihood (`had or might have guns') of facts justifying the search[,]" in support of this argument. See Griffin, supra, at 880. However, the Griffin court stated that an uncorroborated tip indicating that a probationer "had or might have guns" was sufficient to fulfill this "likelihood" standard. Id. Additionally, theGriffin court expressly rejected the use of the probable cause requirement, stating that the "probation regime" would be "unduly disrupted" by it. Id. at 878.
The Griffin court essentially held that probation officers need only reasonable suspicion to believe that a probationer is violating some term of his probation or is otherwise violating the law in order to search a probationer's person or property. See 4 LaFave, Search and Seizure (1996) 780, Section 10.10(d); and Katz Gianelli, Criminal Law (1996) 427, Section 20.12. This can be inferred from one of the reasons the court gave for rejecting a probable cause requirement:
 a probable-cause requirement would reduce the deterrent effect of the supervisory arrangement. The probationer would be assured that so long as his illegal (and perhaps socially dangerous) activities were sufficiently concealed as to give rise to no more than reasonable suspicion, they would go undetected and uncorrected. Griffin, supra, at 878.
Inferentially, then, the court lowered the quantum of suspicion necessary to justify a probationer search to that of reasonable suspicion, in order to enhance "the deterrent effect of the supervisory arrangement."
Griffin has been criticized on the basis that the facts possessed by the probation officers in that case did not measure up to the reasonable suspicion necessary to justify an investigative stop under Terry v. Ohio (1968), 392 U.S. 1, since the probation officers acted solely on the basis of an uncorroborated tip from an unidentified police officer. Katz 
Gianelli, supra. Indeed, in the case before us, the State, during oral argument, acknowledged, correctly, that the information possessed by the parole officers would not have amounted to the level of reasonable suspicion necessary to justify a Terry stop. Nevertheless, the Griffin court justified its decision to allow probationer searches if the information provided indicates "only the likelihood (`had or might have guns') of facts justifying the search," on the grounds that: (1) the "police may be unwilling to disclose their confidential sources to probation personnel"; (2) "the probationer is need of rehabilitation"; and (3) a probationer "is more likely than the ordinary citizen to violate the law."Griffin, supra, at 880.
This court is not unsympathetic to the criticisms that have been leveled at Griffin. Griffin essentially permits a person's status as a probationer to be counted against him twice: first, by allowing a search of the probationer's person or property on the basis of reasonable suspicion, rather than on the basis of a warrant supported by probable cause; and second, by permitting information that is neither firsthand nor corroborated to constitute the reasonable suspicion necessary to justify the search, in part, because probationers are presumed to be more likely to break the law than ordinary citizens. Nevertheless,Griffin set forth the constitutional minimum with respect to probationer searches, and, in this state, those same standards apply to parolees. Accordingly, we conclude that the parole officers had reasonable grounds to search Mattison's person and property.
 B
R.C. 2967.15(A) allows a parole officer to make a warrantless arrest of a parolee if the officer has "reasonable cause to believe" that the parolee is violating a term or condition of his parole. R.C. 2967.15(A) does not define "reasonable cause." However, "reasonable cause" has been defined elsewhere as follows:
 [a]s basis for arrest without warrant, is such state of facts as would lead man of ordinary care and prudence to believe and conscientiously entertain honest and strong suspicion that person sought to be arrested is guilty of committing a crime. Black's Law Dictionary (6 Ed. 1990) 1265.
Here, the parole officers arrested Mattison prior to conducting any search. The only information that the parole officers possessed at the time they placed Mattison under arrest was that Mattison was "possibly armed." That information did not give the parole officers "reasonable cause to believe" that Mattison had violated a term of his parole. Nevertheless, the parole officers did have reasonable grounds to search Mattison's person and his property, and were permitted to detain him for that purpose. Moreover, they were permitted to handcuff him so that they could conduct their search safely, particularly since Mattison was possibly armed. Upon searching Mattison's pocket, the parole officers found a bullet. During their subsequent search of Mattison's residence, they found several handguns and some marijuana, which provided them with probable cause — not just reasonable cause — to arrest. Accordingly, the fact that the parole officers informed Mattison that he was under arrest prior to the time they actually possessed reasonable cause to arrest him is of no significance under the facts of this case. The bullet would inevitably have been discovered, even if Mattison had not been immediately arrested, as a result of the search of his person incident to his subsequent, lawful arrest, once the handguns and marijuana had been found at his residence. Evidence obtained as a result of an unlawful search or seizure is not subject to suppression if it would inevitably have been discovered as a result of lawful police activity. Nix v. Williams (1984),467 U.S. 431, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377.
Mattison's sole assignment of error is overruled.
 III
Mattison's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and BROGAN, J., concur.
Copies mailed to:
George A. Katchmer, John H. Rion, Hon. Mary Donovan
[1] R.C. 2967.131(B) was originally enacted on November 9, 1995. The statute was modified on July 1, 1996, and again on March 17, 1998. The amendments do not affect the outcome of this case.